**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| LAURA KELLY,<br><br>        Plaintiff,<br>v.<br><br>ELI LILLY AND COMPANY,<br><br>        Defendant. | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.:  2:25-cv-1545 |

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections and privileges, and obligations of that Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the District of Kansas as Plaintiff's designated venue ("Original Venue"). Plaintiff makes this selection based upon one (or more) of the following factors:

 X  Plaintiff currently resides in Atchison, Atchison County, Kansas.

 X  Plaintiff purchased and used Defendant(s)' products in Atchison, Atchison County, Kansas.

___ The Original Venue is a judicial district in which Defendant _____ resides, and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

 X  The Original Venue is a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)):

Defendant routinely markets Trulicity in this District and conducts business related to Trulicity in this District. Original Venue is further proper as Plaintiff is a resident of this District, was prescribed Defendant's product in this District, purchased Defendant's product in this District, and was injured and treated in this District.

 X  There is no district in which an action may otherwise be brought under 28 USC § 1391,

and the Original Venue is a judicial district in which Defendant Eli Lilly and Company is

subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

___ Other reason (please explain):

_____.

## NATURE OF THE CASE

1.      Plaintiff LAURA KELLY ("Plaintiff") by and through her attorneys, files this Complaint against Defendant Eli Lilly and Company ("Defendant") for its failure to warn Plaintiff about the true risks of its drug, Trulicity, as well as for negligence and deceptive and unfair marketing of the same.  This is an action for damages suffered by Plaintiff who was severely injured as a result of her use of Trulicity, an injectable prescription medication that is approved for the treatment of type 2 diabetes.  In support thereof, Plaintiff alleges as follows:

## PARTIES

2.      Plaintiff resides in and is a citizen of Atchison, Atchison County, Kansas

3.      Defendant is an Indiana corporation with its principal place of business at 893 S. Delaware St., Indianapolis, Indiana.

4.      Upon information and belief, Defendant has conducted business in and derived substantial revenue from within the State of Kansas.

5.     Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed Trulicity and is identified on the drugs labels. [1]

6.     Upon information and belief, Defendant failed to warn the end users of Trulicity of the complications and devastating effects of which the company knew or should have known.

7.     Upon information and belief, Defendant's marketing was deceptive and misleading about the true risks associated with the use of Trulicity of which the company knew or should have known.

8.     All acts and omissions of Defendant, as described herein, were done by its agents, servants, employees, and/or owners acting in the course and scope of their respective agencies, services, employments, and/or ownership.

## **JURISDICTION**

9.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) as the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different states, as Plaintiff is a citizen of the State of Kansas, and the Defendant is neither incorporated nor has its principal place of business in the State of Kansas.

10.     This Court has personal jurisdiction over Defendant consistent with the United States Constitution and Kan. Stat. Ann. § 60-308 as Plaintiff's claims arise out of Defendant's transaction of business and tortious acts within the State of Kansas and by virtue of Defendant's substantial, continuous, and systematic contacts with the State of Kansas.

---

[1] https://www.accessdata.fda.gov/drugsatfda_docs/label/2020/125469s036lbl.pdf (last visited on December 12, 2024).

## FACTUAL BACKGROUND

**A.    The Regulatory Approval Process for Trulicity.**

11.    On September 18, 2014, the FDA approved Defendant's Biologics License Application ("BLA") for dulaglutide "as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus" to be marketed as Trulicity in "single dose pre-filled syringes and pre-filled pens." As initially approved, the recommended dose for Trulicity was 1.5 mg per week.[2]

12.    On April 19, 2019, Defendant submitted supplemental BLA 125469/S-033, requesting approval to expand its marketing of Trulicity by adding an indication for reduction of major cardiovascular events in adults with type 2 diabetes. On February 21, 2020, the FDA approved the request.[3]

13.    On November 4, 2019, Defendant submitted BLA 125469/S-036, seeking approval for higher doses (3 mg per week and 4.5 mg per week) of Trulicity. On September 3, 2020, the FDA approved that request.[4]

14.    On May 17, 2022, Defendant submitted BLA 125469/S-051, seeking to add an indication for a new patient population: "pediatric patients 10 years of age and older with type 2 diabetes mellitus."

15.    On November 17, 2022, the FDA approved the drug for pediatric use.[5]

---

[2] FDA Approval Letter for BLA 125469/0 (Sept. 18, 2014), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2014/125469Orig1s000ltr.pdf.
[3] FDA Approval Letter for BLA 125469/S-033 (Feb. 21, 2020), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/125469Orig1s033ltr.pdf.
[4] See News Release: FDA approves additional doses of Trulicity (dulaglutide) for the treatment of type 2 diabetes, Eli Lilly (Sept. 3, 2020) available at https://investor.lilly.com/news- releases/news-release-details/fda-approves-additional-doses-trulicityr-dulaglutide-treatment.
[5] FDA Approval Letter for BLA 125469/S-051 (Nov.17, 2022), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/125469Orig1s051ltr.pdf

**B.      Defendant's Marketing and Promotion of Trulicity.**

16.      At all relevant times, Defendant was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Trulicity.

17.      Defendant had been advertising its diabetes medication, Trulicity, since 2015, and began marketing it with an eye toward weight loss in 2018, though it was not approved for weight loss. In the 2018 Trulicity advertising campaign "Do More," an overweight firefighter exclaims, "[Trulicity] comes in an easy-to-use pen, and I may even lose a little weight!"[6]

18.      This weight loss messaging continues in a series of advertisements in 2021 and 2022 called "On His Game," "Father-Son," and "My Sister" where the voiceover indicates that taking Trulicity can help you "lose up to 10 lbs."[7] These advertisements were even targeted to Spanish speaking population proclaiming "puedes perder hasta 10 LBS" in an advertisement from 2022.[8]

19.      In 2022, Defendant purchased 184,000 meals for doctors, which amounted to roughly $3.5 Million while promoting its drugs Mounjaro and Trulicity.[9]

20.      As part of a social media campaign, Defendant launched #Trulikeme which was "aimed to reduce the stigma surrounding diabetes while encouraging individuals to share their stories." This hashtag was launched on Instagram and Facebook and resulted in "thousands" of patients sharing their stories.[10]

---

[6] https://www.ispot.tv/ad/dBhL/trulicity-do-more-firefighter.
[7] https://www.ispot.tv/ad/Oqgb/trulicity-on-his-game https://www.ispot.tv/ad/q4Kl/trulicity- father-son; https://www.ispot.tv/ad/bffc/trulicity-my-sister.
[8] https://www.ispot.tv/ad/bKNt/trulicity-reduce-el-azcar-spanish.
[9] https://www.forbes.com/sites/johnlamattina/2023/07/20/fattening-doctors-to-promote-weight-loss-drugs/ (last accessed Oct. 10, 2024).
[10] https://www.linkedin.com/pulse/eli-lillys-strategic-social-media-management-case-ahmed-dz6pf/ (last visited Nov. 12, 2024)

**C.    Medical Literature and Clinical Trials Gave Defendant Notice of Gastroparesis Being Causally Associated with GLP-1RAs.**

21.    Trulicity (Dulaglutide) belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

22.    Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.[11]

23.    Because the risk of gastroparesis and its sequelae is common to the entire class of drugs, any published literature regarding the association between gastroparesis and its sequelae and any GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendant on notice of the need to warn patients and prescribing physicians of the risks of gastroparesis and its sequelae associated with these drugs.

24.    In addition to pancreatic effects, the published medical literature shows that GLP-1 slows gastric emptying and intestinal motility. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism concluded that GLP-1 slows gastric emptying.[12]

25.    Defendant knew or should have known of the risks of gastroparesis and its sequelae from the clinical trials, medical literature, and case reports.

26.    A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascular outcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide

---

[11] Hinnen D, Glucagon-Like Peptide 1 Receptor Agonists for Type 2 Diabetes, 30(3) Diabetes Spectr., 202–210 (August 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5556578 (last visited July 8, 2024).
[12] Deane AM et al., Endogenous Glucagon-Like Peptide-1 Slows Gastric Emptying in Healthy Subjects, Attenuating Postprandial Glycemia, 95(1) J Clinical Endo Metabolism, 225-221 (January 1, 2010), available at https://academic.oup.com/jcem/article/95/1/215/2835243 (last visited on 9/26/23); American Society of Anesthesiologists, Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (last visited on 9/26/23).

group than in the placebo group, including a severe adverse event report of impaired gastric emptying with semaglutide 0.5 mg together with other serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and diarrhea.[13]

27.    A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[14]

28.    Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[15] As explained above, these are symptoms of gastroparesis.[16]

---

[13] Marso, SP, et al., Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes, N. Eng. J. Med. 375:1834-1844 (November 2016), available at https://www.nejm.org/doi/10.1056/NEJMoa1607141 (visited on 10/19/23).

[14] Nakatani Y et al., Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy, 43(5) Diabetes & Metabolism, 430-37 (October 2017), available at https://www.sciencedirect.com/science/article/pii/S1262363617301076 (last visited on 10/25/23)

[15] Sikirica M et al., Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/

[16] Sikirica M et al., Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/

29.     In August of 2020, medical literature advised that some "patients do not know they have diabetic gastroparesis until they are put on a glucagon-like peptide 1 (GLP-1) receptor agonist such as... semaglutide... to manage their blood glucose." The article went on to explain that "[t]his class of drugs can exacerbate the symptoms of diabetic gastroparesis….Thus, GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis.[17]

30.     An October 2021 article in the Journal of Investigative Medicine ("JIM") concluded that because gastroparesis can be associated with several medications, "[i]t is crucial to identify the causative drugs as discontinuation of the drug can result in resolution of the symptoms[.]" In diabetics, making this determination can be particularly "tricky" because both diabetes and GLP-1RAs can cause delayed gastric emptying. As such, "the timeline of drug initiation and symptom onset becomes of the upmost importance." The authors reviewed two case reports (discussed below) and concluded that history taking and making an accurate diagnosis of diabetic gastroparesis versus medication-induced gastroparesis is critical.[18]

31.     Case Report #1 in JIM involved a 52-year-old female with long-standing (10 years) well-controlled, type 2 diabetes who had been taking weekly semaglutide injections approximately one month prior to the onset of gastroparesis symptoms. The patient was referred with a 7-month history of post-prandial epigastric pain, accompanied by fullness, bloating, and nausea. A gastric emptying study showed a 24% retention of isotope in the patient's stomach at four hours, indicative

---

[17] Young CF, Moussa M, Shubrook JH, Diabetic Gastroparesis: A Review, Diabetes Spectr. (2020), Aug; 33(3): 290– 297, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7428659/ (visited on 9/26/23).
[18] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23)

of delayed gastric emptying. The patient discontinued semaglutide and his symptoms resolved after six weeks. The case report authors concluded that "thorough history taking revealed the cause [of gastroparesis] to be medication induced."[19]

32.    Case Report #2 in JIM involved a 57-year-old female with a long-standing (16 years) type 2 diabetes who had been taking weekly dulaglutide injections (another GLP-1RA) for 15 months and suffering from abdominal bloating, nausea, and vomiting for 12 of those months. A gastric emptying study showed 35% retention of isotope in the patient's stomach at four hours, indicating delayed gastric emptying. After discontinuing dulaglutide, the patient experienced a gradual resolution of symptoms over a four-week period.[20]

33.    A June 2022 study reported GLP-1RA Mounjaro (tirzepatide) adverse events of vomiting, nausea, and "severe or serious gastrointestinal events."[21]

34.    An October 2022 study analyzed 5,442 GLP-1RA adverse gastrointestinal events. Thirty-two percent were serious, including 40 deaths, 53 life-threatening conditions, and 772 hospitalizations. The primary events were nausea and vomiting. There were also adverse events for impaired gastric emptying.[22]

35.    In February 2023, a longitudinal study of GLP-1RA (dulaglutide) reported adverse events for nausea and vomiting and one adverse event of impaired gastric emptying.[23]

---

[19] *Id.*
[20] *Id*.
[21] Jastreboff, Tirzepatide Once Weekly for the Treatment of Obesity, N Engl J Med, at 214 (June 4, 2022) (https://doi.org/10.1056/nejmoa2206038).
[22] Shu, Gastrointestinal adverse events associated with semaglutide: A pharmacovigilance study based on FDA adverse event reporting system, Front. Public Health (Oct. 20, 2022). (https://doi.org/10.3389%2Ffpubh.2022.996179).
[23] Chin, Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month postmarketing observational study, J Diabetes Investig (Feb. 2023) (https://doi.org/10.1111%2Fjdi.13932).

36.     On March 28, 2023, a case study concluded that impaired gastric emptying is "a significant safety concern, especially since it is consistent with the known mechanism of action of the drug." [24]

37.     On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[25]

38.     News sources have identified the potential for serious side effects in users of Ozempic leading to hospitalization.   For example, NBC News reported in January 2023 that some Ozempic users were discontinuing use because their symptoms were unbearable, and one user said that five weeks into taking the medication she found herself unable to move off the bathroom floor because she had "vomited so much that [she] didn't have the energy to get up."[26]

39.     A July 25, 2023 article in Rolling Stone magazine—"Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'"—discussed the severe gastrointestinal effects of GLP-1RAs. In a statement to Rolling Stone, Novo Nordisk

---

[24] Klein, Semaglutide, delayed gastric emptying, and intraoperative pulmonary aspiration: a case report, Can J. Anesth (Mar. 28, 2023) (https://doi.org/10.1007/s12630-023-02440-3).

[25] American Society of Anesthesiologists, Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop- before-elective-surgery (last visited on 9/26/23).

[26] Bendix A, Lovelace B Jr., *What it's like to take the blockbuster drugs Ozempic and Wegovy, from severe side effects to losing 50 pounds*, NBC News (Jan. 29, 2023), available at https://www.nbcnews.com/health/health-news/ozempic- wegovy-diabetes-weight-loss-side-effects-rcna66493 (last visited on 9/26/23).

acknowledged that "[t]he most common adverse reactions, as with all GLP-1 RAs, are gastrointestinal related." Novo Nordisk further stated that while "GLP-1 RAs are known to cause a delay in gastric emptying, … [s]ymptoms of delayed gastric emptying, nausea and vomiting are listed as side effects." Novo Nordisk did not claim to have warned consumers about gastroparesis and its sequelae, or other severe gastrointestinal issues.[27]

40.    On July 25, 2023, CNN Health reported that patients taking GLP-1RAs are experiencing severe gastrointestinal reactions. One patient taking Wegovy (semaglutide) suffered ongoing nausea and vomiting, which was not diagnosed, but which needed to be managed with Zofran and prescription probiotics.[28]

41.    On July 26, 2023, a New York hospital published an article to its online health blog section noting that GLP-1RAs can delay or decrease the contraction of muscles that mix and propel contents in the gastrointestinal tract leading to delayed gastric emptying. One concern raised was that doctors often misdiagnose the patients' symptoms, meaning it may take a long time for someone to be diagnosed correctly. [29]

42.    In an October 5, 2023, Research Letter published in the Journal of the American Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis,

---

[27] CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight- loss- side-effects-1234794601 (last visited on 9/26/23).

[28] Brenca Goodman, They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed, CNN Health (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis (last visited on 9/26/23).

[29] Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines, Montefiore Health Blog article (released July 26, 2023), available at https://www.montefiorenyack.org/health-blog/what-you-need-know-about-gastroparesis (last visited on 9/26/2023).

gastroparesis, and bowel obstruction. The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of intestinal obstruction and 3.67 times higher risk of gastroparesis.[30]

43.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

44.    On information and belief, Defendants not only knew or should have known that their GLP-1RAs cause delayed gastric emptying and inhibit intestinal motility, resulting in risks of gastroparesis and its sequelae, but they may have sought out the delayed gastric emptying effect due to its association with weight loss. For example, a recent study published in 2023 notes that "it has been previously proposed that long-acting GLP-1RAs could hypothetically contribute to reduced energy intake and weight loss by delaying GE [gastric emptying]."[31]

**D.    Defendant Failed to Warn of the Risk of Severe Gastrointestinal Events, Including Gastroparesis, From Trulicity Usage.**

45.    At all times relevant to this action, the label to Defendant's Trulicity did not contain sufficient warnings related to the risks of injuries, including gastroparesis.[32]

46.    Defendant's on-line promotional website for Trulicity includes a variety of information about the benefits of Trulicity relating to blood sugar and cardiovascular health, as

---

[30] Mohit Sodhi, et al., *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), available at https://jamanetwork.com/journals/jama/fullarticle/2810542 (last visited 10/19/23).
[31] Jensterle M et al., *Semaglutide delays 4-hour gastric emptying in women with polycystic ovary syndrome and obesity*, 25(4) Diabetes Obes. Metab. 975-984 (April 2023), available at https://dom-pubs.onlinelibrary.wiley.com/doi/epdf/10.1111/dom.14944 (last visited on 9/26/23).
[32] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/125469s046s052lbl.pdf

well as "Important Safety Information" – however, Defendant does not disclose any risks associated with severe gastrointestinal events, including gastroparesis, within the "Important Safety Information" section of the promotional website.[33]

47.    Similarly, the Prescribing Information discloses warnings, precautions, and adverse reactions associated with Trulicity, but it did not disclose the risk of gastroparesis.[34]

48.    Data and information outlined in this Complaint suggest Defendant knew or should have known in the exercise of reasonable care in in its drug surveillance activities that patients taking certain GLP-1, including Defendant's Trulicity, were at significantly increased risk of developing gastroparesis.

49.    In the exercise of reasonable care, Defendant should have included the warning for gastroparesis and should have taken immediate steps taken to notify prescribing physicians and patients of the warning.

50.    From the date the Defendant received FDA approval to market Trulicity, Defendant made, distributed, marketed, and/or sold Trulicity without adequate warning to Plaintiff's prescribing physician(s) and/or Plaintiff that Trulicity was associated with and/or could cause severe gastrointestinal issues including gastroparesis.

51.    Upon information and belief, Defendant ignored the association between the use of GLP-1 receptor agonists and the risk of developing severe gastrointestinal issues, including gastroparesis.

52.    Defendant's failure to disclose information that it possessed regarding the association between the use of GLP-1 receptor agonists and the risk of developing severe

---

[33] https://trulicity.lilly.com/what-is-trulicity#how-trulicity-works (last visited 12/21/2024).
[34] https://uspl.lilly.com/trulicity/trulicity.html#pi (last visited March 12, 2025).

gastrointestinal issues, including gastroparesis, rendered the warnings for this medication inadequate.

53.    By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from severe gastrointestinal issues and digestive issues, including gastroparesis, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for surgical intervention, lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

**E.    Plaintiff's Medical History and Experiences**.

54.    Plaintiff was born on March 25, 1966.

55.    Plaintiff began using Trulicity on or around April of 2021 for its intended use to treat type 2 diabetes.

56.    Plaintiff's physician prescribed the Trulicity that was used by Plaintiff.

57.    After Plaintiff began using Trulicity, she began suffering from abdominal pain and diarrhea.

58.    Plaintiff was seen at Mosaic Life Care in St. Joseph, MO in the spring 2023, where she underwent a gastric emptying study, and again in the fall of 2023, where she underwent an upper GI endoscopy, both of which diagnosed gastroparesis.

59.    Plaintiff discontinued her use of Trulicity due to her physician's orders and her gastrointestinal injuries.

60.    As a result of using Defendant's Trulicity, Plaintiff was caused to suffer from severe gastrointestinal events, including gastroparesis. As a result, Plaintiff has sustained severe

and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

## COUNT I: NEGLIGENCE

61.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

62.     Defendant, directly or indirectly, caused Trulicity to be sold, distributed, packaged, labeled, marketed, promoted, and used by Plaintiff. At all relevant times, Defendant registered, researched, distributed, marketed, overpromoted, and sold Trulicity within the State of Kansas and throughout the United States.

63.     At all relevant times, Defendant had a duty to exercise reasonable care in the manufacture, marketing, advertisement, supply, storage, transport, packaging, sale, and distribution of products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell Trulicity products that did not cause users to suffer from unreasonable, dangerous side effects without an adequate warning—when used alone or in foreseeable combination with other drugs.

64.     At all relevant times, Defendant knew, or in the exercise of reasonable care, should have known of the hazards and dangers associated with Trulicity and, specifically, that use of this drug could cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

65.     At all relevant times, Defendant knew, or in the exercise of reasonable care, should have known that the use of Trulicity could cause Plaintiff's injuries and, thus, created a dangerous

15

and unreasonable risk of injury to Plaintiff and other users of this product for which Defendant did not warn.

66.    Defendant knew or in the exercise of reasonable care should have known that users and consumers were unaware of the risks and magnitude of the risks associated with the use of Trulicity.

67.    Defendant breached its duty of care to Plaintiff and Plaintiff's treating physicians, in the warning, testing, monitoring, and pharmacovigilance of Trulicity.

68.    In disregard of its duties, Defendant committed one or more of the following negligent acts or omissions:

    a.    Manufacturing, producing, overpromoting, marketing, formulating, creating, developing, designing, selling, and distributing Trulicity without thorough and adequate pre- and post-market testing of the product;

    b.    Manufacturing, producing, overpromoting, marketing, advertising, formulating, creating, developing, and distributing Trulicity and, upon information and belief, while negligently and intentionally concealing and failing to disclose clinical data which demonstrated the risk of serious harm associated with the use of Trulicity;

    c.    Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Trulicity were safe for its intended use;

    d.    Upon information and belief, failing to disclose and warn of the product defect to the regulatory agencies, the medical community, and consumers that Defendant knew and had reason to know that Trulicity was indeed

16

unreasonably unsafe and unfit for use by reason of the product's defect and risk of harm to its users;

e.   Failing to warn Plaintiff, the medical and healthcare community, and consumers that Trulicity's risk of harm was unreasonable and that there were safer and effective alternative products available to Plaintiff and other consumers;

f.   Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use Trulicity;

g.   Advertising, marketing, and recommending the use of Trulicity while concealing and failing to disclose or warn of the dangers known by Defendant to be connected with and inherent in the use of Trulicity;

h.   Failing to use reasonable and prudent care in the design, research, testing, manufacture, and development of Trulicity so as to avoid the risk of serious harm associated with the use of Trulicity. Failing to design and manufacture Trulicity so as to ensure the drug was at least as safe and effective as other similar products;

i.   Failing to ensure that Trulicity was accompanied by proper and accurate warnings about the risk of severe gastrointestinal problems, including gastroparesis.

j.   Failing to ensure that Trulicity was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of Trulicity and that use of Trulicity created a high risk of severe injuries; and

17

k.    Failing to conduct adequate testing, including pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Trulicity.

69.    A reasonable manufacturer, designer, distributor, promotor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

70.    As a direct and proximate result of Defendant's negligent testing, monitoring, and pharmacovigilance of Trulicity, Defendant introduced a drug into this State that they knew or should have known would cause serious and severe complications in people, including Plaintiff, such as gastroparesis, and Plaintiff has been injured catastrophically and sustained severe and permanent pain, suffering, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

71.    The aforementioned negligence and wrongs done by Defendant were aggravated by the kind of grossly negligent conduct and disregard for the rights of others, the public, and Plaintiff, for which the law allows the imposition of exemplary or punitive damages, in that Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendant proceeded with a reckless disregard to the rights, safety, or welfare of others, including Plaintiff.

72.    Defendant is liable in tort to Plaintiff for its wrongful conduct pursuant to Kansas law.

73.    As a direct and proximate result of one or more of the above-stated negligent acts by Defendant, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and punitive damages.

## COUNT II: NEGLIGENCE - FAILURE TO WARN

74. Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

75. Trulicity is a product within the meaning of the Kansas Product Liability Act. K.S.A § 60-3301 et seq.

76. Trulicity was expected to reach, and did reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold or distributed.

77. Defendant owed Plaintiff and other Trulicity users a duty to exercise reasonable care in marketing, advertising, promoting, distributing and/or selling Trulicity.

78. Defendant advertised and promoted Trulicity for the purpose of diabetes control.

79. At all times material, Trulicity was used in a manner intended and/or foreseeable to Defendant.

80. A reasonable patient or consumer of Trulicity would expect the drug to be free of significant defects.

81. Defendant knew or had reason to know of facts establishing that Trulicity posed a significant risk of malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, intraoperative aspiration, Wernicke's encephalopathy, and death and deliberately proceeded to act, or failed to act, in conscience disregard of, or indifference, to that risk.

82. At all times relevant hereto, the defective nature of Trulicity was known to Defendant, or reasonably and scientifically knowable to it, through appropriate research and

testing by known methods, at the time it distributed, supplied, or sold its product and not known to ordinary physicians who would be expected to prescribe the drug to their patients.

83.    In disregard of its duty to timely warn consumers of health risks associated with Trulicity, Defendant committed one or more of the following negligent acts or omissions:

    a.    Failing to properly and adequately warn and instruct Plaintiff and Plaintiff's treating physicians that Trulicity was designed and/or manufactured in a way that it could cause injuries and damages, including lasting and permanent gastrointestinal injuries such as gastroparesis;

    b.    Failing to timely disclose to Plaintiff and Plaintiff's treating physicians the risks of increased risk of severe gastrointestinal events (e.g., gastroparesis), DVT, intraoperative aspiration, Wernicke's encephalopathy, and/or death; and

    c.    Failing to timely warn Plaintiff and Plaintiff's treating physicians that a detailed lab work and patient history should be obtained before starting Trulicity.

84.    At all relevant times, the label for Trulicity was inadequate because it did not warn and/or adequately warn of all possible adverse side effects associated with the use of Trulicity, including the increased risk of severe gastrointestinal events (e.g., gastroparesis), DVT, intraoperative aspiration, Wernicke's encephalopathy, and/or death.

85.    The label for Trulicity was inadequate because it did not contain sufficient instructions for use such that a physician and patient could make an informed prescribing decision, adequately monitor the patient while using, and mitigate potential harms from the use of Trulicity.

86.    At all relevant times, the label for Trulicity was inadequate because it did not warn and/or adequately warn that Trulicity had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events (e.g., gastroparesis), as well as DVT, intraoperative aspiration, Wernicke's encephalopathy, and/or death.

87.    The label for Trulicity was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Trulicity.

88.    The label for Trulicity was inadequate because it did not warn and/or adequately warn of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

89.    At all relevant times, communications made by Defendant to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendant failed to warn and/or adequately warn of all possible adverse side effects associated with the use of Trulicity, including the increased risk of severe gastrointestinal events (e.g., gastroparesis), DVT, intraoperative aspiration, Wernicke's encephalopathy, and/or death.

90.    At all relevant times, communications made by Defendant to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendant failed to warn and/or adequately warn that Trulicity had not been sufficiently and/or adequately tested for safety risks, including severe gastrointestinal events (e.g., gastroparesis), DVT, intraoperative aspiration, Wernicke's encephalopathy, and/or death.

91.    Defendant's failure to warn of the above was the proximate cause of Plaintiff's injuries, harm, and economic loss, from which Plaintiff continues to suffer.

92.    Defendant's failure to warn of the significant risks of Trulicity use prevented Plaintiff and Plaintiff's treating physicians from conducting a proper assessment of the risks and benefits of using Trulicity.

93.    Had Plaintiff and/or Plaintiff's treating physicians been properly warned of the significant risks of Trulicity, they would not have elected to begin and/or continue Trulicity therapy.

94.    Reasonable, safer alternative treatments were available to Plaintiff and/or Plaintiff's treating physicians had they been warned of these significant risks.

95.    Defendant is liable in tort to Plaintiff for its wrongful conduct pursuant to Kanas law.

96.    As a direct, foreseeable and proximate result of Defendant's failure to warn of the significant risks associated with Trulicity, Plaintiff suffered grievous bodily injuries and consequent economic and other losses, as referenced above. As a consequence of Defendant's misconduct, Plaintiff's physicians lacked adequate warnings and other appropriate facts that were misrepresented or omitted from the information (if any) that Defendant provided to physicians for Trulicity. Plaintiff suffered injury of a personal and pecuniary nature, including pain and suffering, medical expenses, lost income and disability, and punitive damages.

## COUNT III: NEGLIGENCE - DESIGN DEFECT

97.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

98.    Defendant is liable to Plaintiff for the injuries and damages sustained due to Defendant's negligent design and/or formulation of Trulicity.

99.     At all relevant times to this lawsuit, Defendant owed a duty to consumers including Plaintiff and her health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Trulicity. Defendant's duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing Trulicity.

100.    Defendant negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions, negligently and carelessly:

a.      Failing to use ordinary care in designing, testing, and manufacturing Trulicity;

b.      Failing to design Trulicity as to properly minimize the adverse effects to the gastrointestinal and immune system;

c.      Failing to counteract in the design the known adverse effects on the gastrointestinal and immune system;

d.      Designing a product where the benefits were greatly outweighed by the risks of malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, intraoperative aspiration, Wernicke's encephalopathy, and death;

e.      Designing a product without taking into consideration the proper dosage that could avoid malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, intraoperative aspiration, Wernicke's encephalopathy, and death; and

f.    Trulicity was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

101.    At all reasonable times, given its lack of efficacy and increased safety risks, Trulicity did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff or, in the alternative, her medical providers.

102.    Trulicity was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar drugs.

103.    Despite Defendant's knowledge of the foreseeable risks and unreasonably dangerous nature of Trulicity at all times relevant, Defendant designed and brought the product to market and continued to market the drug when there were safer alternatives available, including but not limited to alternate dosing and reduced exposure, among others.

104.    As a result of Defendant's negligent and reckless design, Plaintiff sustained severe and ongoing injuries.

105.    As a direct and proximate result of one or more of the above-stated negligent acts by Defendant, Plaintiff suffered grievous bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and punitive damages.

## COUNT IV: NEGLIGENT MISREPRESENTATION AND MARKETING

106.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

107.    At all relevant times, Defendant negligently provided Plaintiff, Plaintiff's healthcare providers, the general medical community, and the public with false, fraudulent, and/or incorrect information or omitted or failed to disclose material information concerning Trulicity, including, but not limited to, misrepresentations and marketing regarding the safety and known risks of Trulicity.

108.    At all relevant times, Defendant negligently provided Plaintiff, Plaintiff's healthcare providers, the general medical community, and the public with false, fraudulent, and/or incorrect information or omitted or failed to disclose material information concerning Trulicity, including, but not limited to, misrepresentations and marketing regarding the long term effects of Trulicity.

109.    The information distributed by Defendant to the public, the medical community, Plaintiff and her healthcare providers, including advertising campaigns, labeling materials, print advertisements, commercial media, and marketing was false and misleading and contained omissions and concealment of truth about the dangers of Trulicity.

110.    Defendant's conduct had the capacity to deceive and/or its purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff and Plaintiff's health care providers; to falsely assure them of the quality of Trulicity and induce the public and medical community, including Plaintiff and Plaintiff's healthcare providers, to request, recommend, purchase, and prescribe Trulicity.

111.    Defendant had a duty to accurately and truthfully represent and market to the medical and healthcare community, medical pharmaceutical manufacturers, Plaintiff, Plaintiff's healthcare providers and the public, the known risks of Trulicity, including its propensity to cause malnutrition, cyclical vomiting,  gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus,

25

DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

112.    Defendant made continued omissions in the Trulicity labeling, including promoting it as safe and effective while failing to warn of its propensity to cause malnutrition, cyclical vomiting, and gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

113.    Defendant made additional misrepresentations beyond the product labeling by representing Trulicity as a safe and effective treatment for diabetes with only minimal risks.

114.    Defendant misrepresented and overstated the benefits of Trulicity to Plaintiff, Plaintiff's treaters, and the medical community without properly advising of the known risks to patients.

115.    Defendant made the misrepresentations alleged herein with the intent to induce consumers, like Plaintiff, to take its diabetes treatment products.

116.    In reliance upon the false, deceptive and negligent misrepresentations and omissions and marketing made by Defendant, Plaintiff and Plaintiff's healthcare providers were induced to, and did use and prescribe Trulicity, and relied upon the affirmative misrepresentations and/or negligent omissions in doing so.

117.    As a direct and proximate result of the foregoing negligent misrepresentations and marketing and conduct with capacity to deceive and/or intention to deceive, Plaintiff suffered serious and ongoing injuries.

118.    As a direct and proximate result of the foregoing misrepresentations, marketing, and deceitful intentions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

119.    Defendant knew or should have known that Plaintiff, Plaintiff's healthcare providers, and the general medical community did not have the ability to determine the true material facts which were intentionally and/or negligently concealed and misrepresented by Defendant.

120.    Plaintiff and her healthcare providers would not have used or prescribed Trulicity had the true facts not been concealed by Defendant.

121.    Defendant had sole access to many of the material facts concerning the defective nature of Trulicity and its propensity to cause serious and dangerous side effects.

122.    At the time Plaintiff was prescribed and administered Trulicity, Plaintiff and Plaintiff's healthcare providers were unaware of Defendant's negligent misrepresentations and omissions.

123.    Defendant failed to exercise ordinary care in making representations concerning Trulicity while it was involved in the manufacture, design, sale, testing, quality assurance, quality control, promotion, marketing, labeling, and distribution in interstate commerce, because Defendant negligently misrepresented Trulicity's high risk of unreasonable and dangerous adverse side effects.

124.    Plaintiff and Plaintiff's healthcare providers reasonably relied upon the misrepresentations and omissions made by Defendant, where it concealed and misrepresented facts that were critical to understanding the true and full dangers inherent in the use of the Trulicity.

27

125.    Plaintiff and Plaintiff's healthcare providers' reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiff's injuries.

**COUNT V: VIOLATION OF KANSAS CONSUMER PROTECTION ACT ("CPA")**

126.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

127.    Plaintiff is a "consumer" as defined by Kan. Stat. Ann. § 50-624(b).

128.    Defendant is a "supplier" under Kan. Stat. Ann. § 50-624(l).

129.    The sale of Trulicity described herein to the Plaintiff was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50- 624(c).

130.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a). Deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

131.    Defendant, while engaged in the conduct and practices identified above, committed one or more violations of state law related to consumer protection law or practices, including, but not limited to, the following:

28

a.      Representing that Trulicity has approval, characteristics, ingredients, uses, benefits, or quantities that it does not have;

b.      Representing that Trulicity is of a particular standard, quality or grade; and

c.      Engaging in other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding, as alleged in this Complaint.

132.    Defendant deliberately and/or negligently misrepresented the safety of Trulicity and concealed the risks attendant to use of the drug. Through its misrepresentations, Defendant's conduct had the tendency or capacity to deceive and affected the decisions of Plaintiff and her health care providers to purchase, prescribe, and use Trulicity and to exclude the options of not using another drug product for treatment.

133.    Plaintiff has suffered injuries and economic and non-economic damages as a direct and proximate result of Defendant's statements in the advertising and promotional activities to Plaintiff and Plaintiff's medical providers, as described above.

134.    Plaintiff seeks all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, and any other relief which the court deems proper.

## COUNT VI: BREACH OF EXPRESS WARRANTY

135.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

136.    At all relevant times, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have acquired the Defendant who

designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity as hereinabove described that was used by Plaintiff.

137.    At all relevant times, Defendant expressly warranted to Plaintiff and her prescribing physician(s) that Trulicity was safe as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

138.    At all relevant times, Defendant expressly warranted to Plaintiff and her prescribing physician(s) that the effectiveness of Trulicity outweighed any potential dangers and/or risks.

139.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Trulicity's labels, websites, advertisements, promotional materials, and through other statements.

140.    As a result of Defendant's express warranties to Plaintiff's prescribing physician(s), they were induced to prescribe Trulicity to Plaintiff, and Plaintiff was induced to use Trulicity.

141.    At all relevant times, Defendant reasonably anticipated and expected that individuals, such as the Plaintiff, would use and/or consume Trulicity based upon its express warranties.

142.    At all relevant times, Defendant reasonably anticipated and expected that prescribing physicians, such as the Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Trulicity based upon its express warranties.

143.    At all relevant times, Defendant knew or should have known that Trulicity was unreasonably dangerous because of the drug's increased risk of severe gastrointestinal events and digestive events, including gastroparesis, especially when the drug was used in the form and manner as provided by Defendant.

144.    At all relevant times, Defendant knew or should have known that Trulicity was unreasonably dangerous because the drug's safety risks outweighed any efficacy the drug may have.

145.    At all relevant times, Defendant knew or should have known that Trulicity had not been sufficiently and/or adequately tested for safety.

146.    The unreasonably dangerous characteristics of Trulicity were and are beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

147.    The unreasonably dangerous characteristics of Trulicity were and are beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

148.    At the time Trulicity left the Defendant's control, Trulicity did not conform to Defendant's express warranties because Trulicity was not safe to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, in that it was associated with an increased risk of severe gastrointestinal events, including gastroparesis.

149.    The express warranties made by Defendant regarding the safety and efficacy of Trulicity were made with the intent to induce Plaintiff to use the products and/or her prescribing physician(s) to prescribe the products.

150.    Defendant knew and/or should have known that by making the express warranties to Plaintiff and/or her prescribing physician(s), it would be the natural tendency of Plaintiff to use and/or the natural tendency of her prescribing physician(s) to prescribe Trulicity.

151.    Plaintiff and her prescribing physician(s), as well as members of the medical community, relied on the express warranties of the Defendant identified herein.

152.    Had Defendant not made these express warranties, Plaintiff would not have used Trulicity and/or, upon information and belief, her prescribing physician(s) would not have prescribed Trulicity.

153.    Plaintiff's injuries and damages were directly caused by Defendant's breach of the aforementioned warranties.

154.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

155.    Accordingly, Defendant is liable as a result of its breach of express warranties to Plaintiff.

156.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous severe gastrointestinal events, including gastroparesis , as well as other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for surgical intervention, lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

157.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendant's Trulicity.

158.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that she will require future medical and/or hospital care, attention, and services.

## COUNT VII: STRICT LIABILITY FAILURE TO WARN

159.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

160.    At all relevant times, Defendant was responsible for the labeling, packaging, promotion, marketing and sale of the Defendant's Trulicity that was used by Plaintiff.

161.    At all relevant times, Defendant was required to warn of Trulicity's potential dangers under the Kansas Product Liability Act. K.S.A § 60-3301 et seq.

162.    At all relevant times, Defendant's Trulicity was defective or unreasonably dangerous because it lacked adequate warnings.

163.    At all relevant times, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Trulicity that Plaintiff used.

164.    Trulicity was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendant.

165.    At all relevant times, and at the times Trulicity left Defendant's control, Defendant knew or should have known that Trulicity was unreasonably dangerous because it did not adequately warn of the risks including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, especially when used in the form and manner as provided by Defendant.

166.    Despite the fact that Defendant knew or should have known that Trulicity caused unreasonably dangerous injuries, Defendant continued to market, distribute, and/or sell Trulicity to consumers, including Plaintiff, without adequate warnings.

167.    Despite the fact that Defendant knew or should have known that Trulicity caused unreasonably dangerous injuries, Defendant continued to market Trulicity to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

168.    Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of its failure to provide adequate warnings, as set forth herein.

169.    At all relevant times, given its increased safety risks, Trulicity was not fit for the ordinary purposes for which it was intended.

170.    At all relevant times, given its increased safety risks, Trulicity did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

171.    Defendant had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Trulicity into the stream of commerce, including a duty to assure that the products would not cause users to suffer unreasonable, dangerous injuries, such as malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

172.    At all relevant times, Plaintiff was using Trulicity for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

173.    The Trulicity designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective due to inadequate warnings or instructions, as Defendant knew or should have known that this product created a risk of serious and dangerous injuries, including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendant failed to adequately warn of said risks.

174.    The Trulicity product designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendant knew or should have known of the risks of serious side effects, including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, as well as other severe and permanent health consequences from Trulicity. Defendant failed to provide adequate warnings to users and/or prescribers of these products, and continued to improperly advertise, market and/or promote Trulicity.

175.    The label for Trulicity was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Trulicity, including the including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder

problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

176.    The label for Trulicity was inadequate because they did not warn and/or adequately warn that Trulicity had not been sufficiently and/or adequately tested for safety risks, including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death.

177.    Communications made by Defendant to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendant failed to warn and/or adequately warn that Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

178.    Plaintiff had no way to determine the truth behind the inadequacies of Defendant's warnings as identified herein, and Plaintiff's reliance upon Defendant's warnings was reasonable.

179.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendant's warnings as identified herein, and his/her/their reliance upon Defendant's warnings was reasonable.

180.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, which are causally associated with Trulicity, then the prescribing physician(s) would not have prescribed Trulicity, and/or would have provided

36

Plaintiff with adequate warnings regarding the dangers of Trulicity, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

181.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Trulicity had not been sufficiently and/or adequately tested for safety risks, including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, the prescribing physician would not have prescribed Trulicity, and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

182.    If Plaintiff had been warned of the increased risks of malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, which are causally associated with Trulicity, then Plaintiff would not have used Trulicity and/or suffered from gastroparesis and its sequelae.

183.    If Plaintiff had been warned that Trulicity had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Trulicity and/or suffered gastroparesis and its sequelae.

184.    If Plaintiff had been warned of the increased risks which are causally associated with Trulicity, then Plaintiff would have informed Plaintiff's prescribing physician(s) that Plaintiff did not want to use Trulicity.

185.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to use Trulicity due to the risks or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Trulicity.

186.    By reason of the foregoing, Defendant has become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of the unreasonably dangerous product, Trulicity.

187.    Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendant is therefore liable for the injuries sustained by Plaintiff.

188.    Defendant's inadequate warnings for Trulicity were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

189.    Said inadequate warnings for Defendant's drug Trulicity were a substantial factor in causing Plaintiff's injuries.

190.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

191.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services.

Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### COUNT VIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

192.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

193.    At all relevant times, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Trulicity drug used by Plaintiff.

194.    Trulicity was expected to and did reach the usual consumers, handlers, and persons encountering said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by the Defendant.

195.    At all relevant times, Defendant impliedly warranted to Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Trulicity was of merchantable quality and safe and fit for its ordinary purposes.

196.    At all relevant times, Defendant knew or should have known that Trulicity was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae, especially when the drug was used in the form and manner as provided by Defendant.

197.    At all relevant times, Defendant knew or should have known that Trulicity had not been sufficiently and/or adequately tested for safety at the time Trulicity left Defendant's control and that Trulicity did not conform to Defendant's implied warranty and was unfit for its ordinary purposes because Defendant failed to provide adequate warnings of the drug's causal association with increased risk of gastroparesis and its sequelae.

198.    At the time Trulicity left Defendant's control, Trulicity did not conform to Defendant's implied warranty because Trulicity was an unreasonably dangerous product to use as

an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus or to aid weight loss in adults with obesity, or who are overweight and also have at least one weight-related comorbid condition, and children ages 12-17 with obesity and have a body weight above 132 pounds, in that it was causally associated with increased risk of gastroparesis.

199.    At all relevant times, Defendant reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Trulicity for use by their patients to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk, and/or to promote weight loss.

200.    At all relevant times, Defendant reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Trulicity for its ordinary purposes.

201.    Despite the fact that Defendant knew or should have known that Trulicity cause unreasonably dangerous injuries, such as its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, Defendant continued to market, distribute, and/or sell Trulicity to consumers, including Plaintiff, without adequate warnings.

202.    The unreasonably dangerous characteristics of Trulicity were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

203.    Plaintiff reasonably relied on Defendant's implied warranty of merchantability relating to Trulicity 's safety and efficacy.

204.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Trulicity was of merchantable quality and safe and fit for its intended uses.

40

205.    Upon information and belief, Plaintiff's prescribing physician(s) relied on Defendant's implied warranty of merchantability and fitness for the ordinary uses and purposes relating to Trulicity.

206.    Upon information and belief, Plaintiff's prescribing physician(s), reasonably relied upon the skill and judgment of Defendant as to whether Trulicity was of merchantable quality and safe and fit for their intended uses.

207.    Had Defendant not made these implied warranties, Plaintiff would not have used Trulicity and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Trulicity, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity. Defendant herein breached the aforesaid implied warranty of merchantability because the drug Trulicity was not fit for its intended purposes.

208.    Defendant's breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injury, gastroparesis.

209.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries, some of which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

210.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## COUNT IX:  FRAUDULENT CONCEALMENT

211.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

212.    At all relevant times, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity, which was used by Plaintiff as hereinabove described.

213.    At all relevant times, Defendant knew or should have known that Trulicity had not been adequately and/or sufficiently tested for safety.

214.    At all relevant times, Defendant knew or should have known that Trulicity was unreasonably dangerous because of the increased risk of its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, especially when the drugs were used in the form and manner as provided by Defendant.

215.    Defendant had a duty to disclose material information about Trulicity to Plaintiff and Plaintiff's prescribing physician(s), namely that Trulicity is causally associated with increased risk of including its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death. Because Defendant has superior knowledge of

42

the drug and its dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendant knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

216.    Nonetheless, Defendant consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

217.    Although the Trulicity label listed nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Trulicity patients, it did not mention gastroparesis as a risk of taking Trulicity.

218.    Defendant's promotional websites for Trulicity similarly did not disclose that Trulicity is causally associated with increased risk of gastroparesis.

219.    Defendant's omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s) and patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Trulicity for treatment of type 2 Diabetes.

220.    Defendant knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Trulicity without the awareness of the risks of serious side effects, including gastroparesis.

221.    Defendant knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendant's misrepresentations and concealments surrounding Trulicity, as set forth herein.

222.    Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendant's material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Trulicity.

223.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk gastroparesis causally associated with Trulicity, they would not have prescribed Trulicity and/or would have provided Plaintiff with adequate information regarding the increased risk of gastroparesis causally associated with Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

224.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Trulicity had not been sufficiently and/or adequately tested for safety risks, they would not have prescribed Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

225.    Plaintiff justifiably relied on Defendant's material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Trulicity.

226.    Had Plaintiff been informed of the increased risks causally associated with Trulicity, Plaintiff would not have used Trulicity and/or suffered gastroparesis.

227.    Defendant's fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

228.    As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong

medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

229.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## COUNT X: FRAUDULENT MISREPRESENTATION

230.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

231.    At all relevant times, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity, which was used by Plaintiff as hereinabove described.

232.    At all relevant times, Defendant knew or should have known that Trulicity had not been adequately and/or sufficiently tested for safety.

233.    At all relevant times, Defendant knew or should have known of the serious side effects of Trulicity, including gastroparesis.

234.    At all relevant times, Defendant knew or should have known that Trulicity was unreasonably dangerous because of the increased risk of its propensity to cause malnutrition, cyclical vomiting, gastroparesis, gastroenteritis, bowel obstruction/blockage, ileus, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, esophageal injury, bowel injury, intraoperative aspiration, Wernicke's encephalopathy, and death, especially when the drugs were used in the form and manner as provided by Defendant.

235.    At all relevant times, Defendant knew or should have known that Trulicity was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given its increased risk of gastroparesis.

236.    Nonetheless, Defendant made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Trulicity.

237.    Defendant represented affirmatively and by omission on television advertisements, social media, and other online advertisements, and on the label of Trulicity that Trulicity was a safe and effective drug for treatment of adults with type 2 diabetes, despite being aware of increased risk of gastroparesis causally associated with Trulicity.

238.    Defendant was aware or should have been aware that its representations were false or misleading and knew that it was concealing or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

239.    Defendant's misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase and/or consume Trulicity for treatment of type 2 diabetes.

240.    Upon information and belief, Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Trulicity, and reasonably relied on false and/or misleading facts and information disseminated by Defendant, which included Defendant's omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

46

241.    Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendant's material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Trulicity.

242.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of all safety risks, including gastroparesis, causally associated with Trulicity, they would not have prescribed Trulicity  and/or would have provided Plaintiff with adequate information regarding the increased risks causally associated with Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

243.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Trulicity had not been sufficiently and/or adequately tested for safety risks, they would not have prescribed Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity.

244.    Plaintiff had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Trulicity and reasonably relied on false and/or misleading facts and information disseminated by Defendant, which included Defendant's omissions of material facts of which Plaintiff had no way to know were omitted.

245.    Plaintiff justifiably relied on Defendant's material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Trulicity.

246.    Had Plaintiff been informed of the increased risks causally associated with Trulicity, Plaintiff would not have used Trulicity and/or suffered gastroparesis.

247.    Defendant's fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

47

248.    As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

249.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein, and prays for judgment in her favor and against Defendant awarding the following:

250.    A monetary award, sufficient to compensate Plaintiff for the following categories of damages:

      a.    actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

      b.    actual and treble damages in such amount to be determined by this Court and as provided by law;

c.    exemplary and punitive damages sufficient to punish and deter Defendant

and others from future wrongful practices;

d.    pre-judgment and post-judgment interest;

e.    costs including court costs, and other litigation expenses; and

f.    any other relief the Court may deem just and proper.

Dated:  March 24, 2025

RESPECTFULLY SUBMITTED,

*/s/ Sarah S. Ruane*

Sarah S. Ruane (*Admitted Pro Hac Vice*)
WAGSTAFF & CARTMELL LLP
4740 Grand Ave., Ste 300
Kansas City, MO 64112 Tel:
816-701-1100
Fax: 816-531-2372
sruane@wcllp.com

Bradley D. Honnold (*Admitted Pro Hac Vice*)
GOZA & HONNOLD, LLC
9500 Nall Ave., Ste. 400
Overland Park, KS66207 Tel:
(913) 451-3433
Fax: (913) 839-0567
bhonnold@gohonlaw.com

**Attorneys for Plaintiff**

49